UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MARIA RAMIREZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | EP-22-CV-00144-KC-ATB |
| | § | |
| KILOLO KIJAKAZI, *Acting* | § | |
| *Commissioner of the Social Security* | § | |
| *Administration*, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Presently before the Court is "Plaintiff's Unopposed Motion for Authorization of Attorney Fees Pursuant to 42 USC § 406(b)" (ECF No. 23).  Although the motion is styled as one submitted by Plaintiff Maria Ramirez, a Social Security benefits claimant, the real party in interest is Attorney Bryan Konoski:[1] between April 2022 and October 2023, Konoski represented Ramirez on her appeal, pursuant to 42 U.S.C. § 405(g), from the final decision of Defendant Kilolo Kijakazi, then the Acting Commissioner of the Social Security Administration (SSA),[2] denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*  The Honorable District Judge Kathleen Cardone referred the

---

[1] *See Jeter v. Astrue*, 622 F.3d 371, 374 & n.1 (5th Cir. 2010) (explaining that attorney is the real party in interest on a fee motion under § 406(b) (citing *Gisbrecht v. Barnhart*, 535 U.S. 789, 798 n.6 (2002))).  Hereinafter, the Court may refer to the motion as a motion submitted by Konoski.

[2] Leland Dudek, presently the Acting Commissioner of the SSA, is the successor in office to Martin O'Malley, the former SSA Commissioner, who was, in turn, the successor in office to Kijakazi, who was the named defendant in this action when final judgment was entered in August 2023.  In accordance with Federal Rule of Civil Procedure 25(d), Dudek is automatically substituted as a party in this litigation for the previous officeholders.  *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

motion to the undersigned Magistrate Judge.  For the reasons that follow, the Court finds that the motion should be **GRANTED**.

## I.    BACKGROUND

In January 2018, Ramirez, then 55 years old, applied for DIB, alleging disability beginning on June 1, 2017.[3]  Ramirez's application was denied initially in April 2018, and on reconsideration in July 2018.  In March 2019, Administrative Law Judge (ALJ) Jonathan Blucher held a hearing, and in June 2019, he issued a written decision finding that Ramirez was not disabled.[4]  In May 2020, the Appeals Council vacated ALJ Blucher's decision for failing to "admit[] into the record" and "discuss" certain medical records and remanded with instructions to consider the records.[5]  On remand, after holding a second hearing in July 2021, ALJ Blucher issued a second written decision in September 2021—once again finding that Ramirez was not disabled.[6]  On February 18, 2022, the Appeals Council denied Ramirez's request for review of the ALJ's second decision, and thereby, the decision became the final decision of the Commissioner.[7]

In the administrative proceedings before the agency, attorneys from an El Paso, Texas, law firm, including Attorney Daniel Reyes, represented Ramirez.[8]  For appeal to federal court,

---

[3] Tr. of Admin. R. [hereinafter, cited as "Tr."] at 116, 172, 396.

[4] *Id.* at 172, 180.

[5] *Id.* at 186–87.

[6] *Id.* at 73, 83.

[7] *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) ("The ALJ's decision thus became the Commissioner's final and official decision when the Appeals Council denied [the claimant's] request for review on the merits.").

[8] Tr. at 191–92.

Ramirez sought out the services of Konoski and his law firm;[9] Konoski offices in East Brunswick, New Jersey, and in New York, New York.[10]  Konoski and Ramirez entered into a contingent-fee agreement, stipulating that Konoski would represent Ramirez in federal court review of the denial of his benefits claim in exchange for 25% of Ramirez's "past-due benefits" in the event that Ramirez's case is won.[11]

On April 27, 2022, Konoski filed Ramirez's appeal in federal court.  The case was assigned to Judge Cardone and referred to the Honorable Judge Leon Schydlower, then a U.S. Magistrate Judge.[12]  The case proceeded and about six months later, on October 11, 2022, Konoski filed a brief arguing that the Commissioner's decision denying her claim must be vacated and her claim must be remanded for further proceedings because the ALJ committed reversible errors.[13]  About a month thereafter, on November 9, 2022, the Commissioner filed a brief in response, requesting that the Court affirm the Commissioner's decision.[14]  On August 11, 2023, Judge Schydlower issued his Report and Recommendation wherein he recommended that Judge Cardone should reverse the Commissioner's decision and remand the matter.[15]

On August 28, 2023, Judge Cardone adopted Judge Schydlower's Report and Recommendation (no objection to the Report was filed), reversed the Commissioner's decision,

---

[9] *Id*. at 9–14.

[10] Pl.'s Mot. for Authorization of Att'y Fees Pursuant to 42 U.S.C. § 406(b) at 1, 9 [hereinafter cited as Pl.'s § 406(b) Fee Mot.], ECF No. 23; Compl. at ¶ 3, ECF No. 5; Pl.'s Br. at 19, ECF No. 16.

[11] Pl.'s § 406(b) Fee Mot., Ex. B at 1, ECF No. 23-2.

[12] Subsequently, in March 2024, Judge Schydlower became a U.S. District Judge.

[13] Pl.'s Br. at 17.

[14] Br. in Supp. of Comm'r's Decision at 14, ECF No. 17.

[15] R & R at 7, ECF No. 18.

and remanded the matter to the agency for further proceedings.[16]  On the same day, Judge Cardone entered final judgment.  On October 2, 2023, Ramirez filed a motion for attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d);[17] therein, Ramirez requested an award in the amount of $7,500, which was agreed upon by Ramirez and the Commissioner.[18]  On the following day, Judge Cardone granted the EAJA motion and awarded $7,500 in fees, payable directly to Konoski's law firm.[19]

On remand, in June 2024, an administrative law judge found that Ramirez is disabled.[20]  On August 25, 2024, the SSA issued a Notice of Award, which states that Ramirez is entitled to monthly disability benefits beginning June 2018.[21]  The SSA withheld $17,467.43 for possible future payment of fees under 42 U.S.C. § 406.[22]

On February 27, 2025, Konoski filed the instant motion seeking the Court's authorization for attorney's fees pursuant to 42 U.S.C. § 406(b).  On the same day, Judge Cardone referred the motion to the undersigned Magistrate Judge.[23]  The Commissioner did not file a response to the

---

[16] Order Adopting R & R of Magistrate J. at 2, ECF No. 19.

[17] "Under EAJA, a party prevailing against the United States in court, including a successful Social Security benefits claimant, may be awarded fees payable by the United States if the Government's position in the litigation was not 'substantially justified.'"  *Gisbrecht*, 535 U.S. at 796 (quoting 28 U.S.C. § 2412(d)(1)(A)).

[18] Pl.'s Mot. for Award of Att'y Fees Pursuant to EAJA at 1 [hereinafter cited as Pl.'s EAJA Fee Mot.], ECF No. 21; Konoski Decl. at ¶ 19, ECF No. 21.

[19] Order at 2 [hereinafter cited as EAJA Order], ECF No. 22.  Ramirez had assigned any fees awarded under the EAJA to Konoski's law firm.  Pl.'s EAJA Fee Mot., Ex. C, ECF No. 21-1.

[20] Pl.'s § 406(b) Fee Mot. at ¶ 4; Pl.'s § 406(b) Fee Mot., Ex. A at 3, ECF No. 23-2.

[21] Pl.'s § 406(b) Fee Mot., Ex. A at 1.

[22] *Id.* at 3.

[23] Text Order (Feb. 27, 2025).

motion.[24]  Konoski certifies that counsel for the Commissioner does not oppose the motion.[25]

Konoski also declares that he served a copy of the motion on Ramirez by mail.[26]

## II.   DISCUSSION

Based on the contingent-fee agreement executed by Konoski and Ramirez, Konoski

requests an award of attorney's fees in the amount of $15,767.43 under 42 U.S.C. § 406(b) for

his services performed on Ramirez's behalf in this district court.  Pl.'s § 406(b) Fee Mot. at 1; *id.*

at ¶¶ 7, 15.  Ultimately, however, Konoski requests a net total of $8,267.43, after subtracting

$7,500.00—the amount that Judge Cardone authorized and Konoski was paid under the EAJA—

from the requested § 406(b) amount.  *Id*. at 1; EAJA Order at 2.  Before evaluating Konoski's

requests, the Court sets out the relevant laws.

Section 206 of the Social Security Act, codified at 42 U.S.C. § 406, governs fees for

representation of individuals claiming social security old-age, survivor, or disability benefits:

§ 406(a) governs fees for representation in administrative proceedings, whereas § 406(b) governs

fees for representation in court.  Section 406 is designed to ensure that disability benefits, which

are usually the disabled claimants' sole means of support, are not diluted by "inordinately large

fees" and to encourage "effective legal representation of claimants."  *Dawson v. Finch*, 425 F.2d

1192, 1194 (5th Cir. 1970), *abrogated on other grounds by Culbertson v. Berryhill*, 535 U.S. 789

(2019).  It achieves these objectives by setting "a maximum fee" (or a cap) and by ensuring

"lawyers that they will receive reasonable fees directly through certification by the [SSA]."  *Id.*

---

[24] "[T]he Commissioner of Social Security here has no direct financial stake in the answer to the §
406(b) question; instead, he plays a part in the fee determination resembling that of a trustee for the
claimant."  *Jeter*, 622 F.3d at 374 n.1 (cleaned up).

[25] Certificate of Conferral at 1, ECF No. 23-1.

[26] Pl.'s § 406(b) Fee Mot. at 9.

at 1194–95.  Collecting or even demanding from the client anything more than the applicable

statutory cap is a criminal offense.  *Gisbrecht*, 535 U.S. at 796 (citing 42 U.S.C. §§ 406(a)(5),

406(b)(2)).

Section 406(b), which is at issue here, caps fees for representation before the court at

25% of the claimant's "past-due benefits," *i.e.*, "benefits that accrued before a favorable

decision" is made and "allows the agency to withhold past-due benefits to pay these fees."[27]

*Culbertson*, 586 U.S. at 55, 57; *see also* 20 C.F.R. § 404.1703 (defining "past-due benefits" as

"the total amount of benefits under [T]itle II of the Act that has accumulated to all beneficiaries

because of a favorable administrative . . . determination or decision, up to but not including the

month the determination or decision is made").  That section provides, in relevant part:

> Whenever a court renders a judgment favorable to a claimant under this subchapter
> who was represented before the court by an attorney, the court may determine and
> allow as part of its judgment a *reasonable* fee for such representation, not in excess
> of 25 percent of the total of the past-due benefits to which the claimant is entitled
> by reason of such judgment, and the Commissioner of Social Security may . . .
> certify the amount of such fee for payment to such attorney out of, and not in
> addition to, the amount of such past-due benefits.

42 U.S.C. § 406(b)(1)(A) (emphasis added).[28]  Section 406(b) "requires an affirmative judicial

finding that the fee allowed is 'reasonable,'" and a prevailing attorney seeking fee award within

the 25% statutory cap bears the burden to "show that the fee sought is reasonable for the services

rendered."  *Gisbrecht*, 535 U.S. at 807 & n.17.  "Routine approval of the statutory maximum

allowable fee should be avoided in all cases."  *Lewis v. Sec'y of Health & Human Servs.*, 707

---

[27] Section 406(a), on the other hand, caps fees for administrative representation at the lesser of
25% of past-due benefits or a set dollar amount, currently $9,200.  42 U.S.C. § 406(a)(2); *Maximum
Dollar Limit in the Fee Agreement Process*, 89 Fed. Reg. 40523, 2024 WL 2083394 (SSA May 10, 2024).

[28] *See also Jackson v. Astrue*, 705 F.3d 527, 529–30 (5th Cir. 2013) (An agency award of Social
Security benefits made "after a court-ordered remand is an award made 'by reason of' the court's
judgment.'").

F.2d 246, 250 (6th Cir. 1983) (internal quotes omitted), *cited in Gisbrecht*, 535 U.S. at 808

(approving *Lewis*'s approach to § 406(b) fee determination).

"Most fees in social security cases are pre-arranged on a contingency basis due to the

indigency of a great number of the claimants," *Rodriquez v. Bowen*, 865 F.2d 739, 743 (6th Cir.

1989) (en banc), *cited in Gisbrecht*, 535 U.S. at 808 (approving *Rodriquez*'s approach to §

406(b) fee determination), and quite characteristically, such contingent-fee agreements specify

that the fee will be 25% of any past-due benefits, *Gisbrecht*, 535 U.S. at 803.  Section 406(b)

permits contingency fees but "calls for court review of such arrangements as an independent

check, to assure that they yield reasonable results in particular cases."  *Id.* at 807.  In assessing

the reasonableness of the fee requested based on a contingent-fee agreement, the court may not

employ, as the starting point, the "lodestar" method, *id.* at 792, 808—the cardinal method of

determining reasonable fees under fee-shifting statutes, whereby a court determines, as the

starting point, the "lodestar," *i.e.*, "the number of attorney hours reasonably expended . . .

multiplied by a reasonable hourly rate."[29]  *Brown v. Sullivan*, 917 F.2d 189, 192 (5th Cir. 1990),

*abrogated by Gisbrecht*, 535 U.S. at 799.[30]

---

[29] "Once determined," the lodestar "may be adjusted upward or downward" based on case-specific consideration of the *Johnson* factors.  *Brown*, 917 F.2d at 192–93 (citing *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717–18 (5th Cir. 1974)).

[30] In rejecting the lodestar method as the starting point for a § 406(b) reasonableness analysis, the *Gisbrecht* Court pointed out that for fee shifting statutes such as 42 U.S.C. § 2000e-5(k) (Title VII of Civil Rights Act of 1964), the lodestar method "holds sway" in determining "the amount of fees properly shifted to the loser in the litigation," but § 406(b) is not a fee shifting statute in that it does not shift fees to the loser (here, the SSA), and instead, "[i]t authorizes fees payable from the successful party's recovery" (here, Ramirez's past-due benefits).  *Gisbrecht*, 535 U.S. at 802 ("Section 406(b) is of another genre.").  Moreover, in case of a fee-shifting statute, "nothing prevents the attorney for the prevailing party from gaining additional fees [above the fee awarded based on the lodestar method], pursuant to contract, from his own client," but in case of § 406(b), the prevailing attorney is, under the threat of criminal prosecution, limited to the statutory 25% cap.  *Id.* at 806–07; *see also id.* at 795–96 ("The prescriptions set out in §§ 406(a) and (b) establish the *exclusive regime* for obtaining fees for successful representation of Social Security benefits claimants." (emphasis added)).

- 7 -

Instead, for § 406(b) purposes, to assess "the reasonableness of the fee yielded by [a] [contingent-fee] agreement," the court must "look[] first to the contingent-fee agreement" giving it "primacy." *Gisbrecht*, 535 U.S. at 793, 808. The court may then "appropriately reduce[] the attorney's recovery," *id.* at 808, where (1) the attorney "unnecessarily delayed" the court proceedings in order to accumulate past-due benefits during the pendency of the case and thereby to receive a large fee award, *Jeter*, 622 F.3d at 380 n.10 (citing *Gisbrecht*, 535 U.S. at 808),[31] or (2) the fee constitutes an "unreasonable windfall" for the attorney, *Jeter*, 622 F.3d at 374, 380; *see also Gisbrecht*, 535 U.S. at 808 ("If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order . . . to disallow 'windfalls for lawyers.'" (quoting *Rodriquez*, 865 F.2d at 747)).

Finally, "the agency withholds a single pool of 25% of past-due benefits for direct payment of agency and court fees," respectively under § 406(a) and § 406(b). *Culbertson*, 586 U.S. at 61; *see also* POMS GN 03920.060 (SSA June 8, 2012) ("[W]e withhold 25 percent of the past-due benefits for possible direct payment of a fee the court may authorize for the attorney's services in proceedings before the court."), https://secure.ssa.gov/poms.nsf/lnx/0203920060 (last visited Apr. 16, 2025). Once a court awards a reasonable fee under § 406(b), the SSA directly pays the attorney the awarded fee from the withheld pool. *See* POMS GN 03920.060 ("If the court awards an attorney's fee . . . , [the] SSA will certify direct payment of up to 25 percent of

---

As the Ninth Circuit has recognized, "[t]he lodestar method under-compensates attorneys for the risk they assume in representing [Social Security benefits] claimants and ordinarily produces remarkably smaller fees than would be produced by starting with the contingent-fee agreement." *Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009) (en banc); *accord Jeter*, 622 F.3d at 378–79.

[31] "This sort of reduction, however, is limited to instances where the attorney himself unnecessarily delayed the proceedings. Nothing in *Gisbrecht* supports reducing the attorney's fee merely because the Administration or the court acted to delay or extend the timeline of the proceedings." *Jeter*, 622 F.3d at 380 n.10.

the Title II past-due benefits, minus the assessment.").  Relatedly, where fees are awarded under both the EAJA and § 406(b), the attorney "must refund to the claimant the amount of the smaller" of the two awards.  *Gisbrecht*, 535 U.S. at 796 (cleaned up).

Here, as mentioned, based on the contingent-fee agreement, Konoski requests an award of attorney's fees in the amount of $15,767.43 under § 406(b).  Giving primacy to the fee agreement, the Court examines whether the requested amount should be reduced on the two above-mentioned grounds set forth in *Gisbrecht* and *Jeter*.

First, the record does not indicate that Konoski unnecessarily delayed the proceedings in this Court.  In September 2022, Konoski requested a 60-day extension of time to file Ramirez's opening brief on the grounds that he had to handle his law firm partner's caseload in addition to his own because his partner had tested positive for COVID-19.  Unopposed Mot. for Extension of Time at ¶ 5, ECF No. 15.  Ultimately, Konoski filed the brief one month after the expiration of the original deadline for filing the brief.  *Compare* Order Directing Filing of Brs. at 1, ECF No. 14, *with* Pl.'s Br. at 18.

Second, as explained below, it does not appear that the requested amount constitutes an unreasonable windfall to Konoski.  In assessing whether "a contingency fee results in an unreasonable windfall," a court may consider "the lodestar calculation" so long as the court simultaneously "articulate[s] additional, specific factors" bearing on "whether an attorney's success [on appeal] is attributable to his own work or instead to some unearned advantage for which it would not be reasonable to compensate him."  *Jeter*, 622 F.3d at 380–82.  Such factors

include: (1) percentage of the past-due benefits the fee constitutes,[32] (2) difficulty of the case,[33] (3) attorney's risk of loss in the representation,[34] (3) attorney's skill or experience;[35] (4) character of the representation,[36] and (5) the results the attorney achieved.[37]  If the court finds that the requested fee would constitute an unearned windfall, it may award fees based on an "effective hourly fee rate" that is less than the *de facto* hourly rate—*i.e.*, the ratio of the fee amount requested based on the fee agreement to the number of hours expended.  *See Jeter*, 622 F.3d at 380, 382; *see also id.* at 375–76, 381 n.11 (approving lower court's fee award based on an effective hourly rate of $312.50 whereas the *de facto* hourly rate was $846.88).

To start, what is the *de facto* hourly rate here?  Earlier, on Ramirez's motion for fees under the EAJA, Konoski initially estimated fees in the amount of $8,684.25; that amount was

---

[32] *Jeter*, 622 F.3d at 382; *see also Wells v. Sullivan*, 907 F.2d 367, 372 (2d Cir. 1990) (The court "should . . . determine whether the contingency percentage is within the 25% cap."), *cited in Gisbrecht*, 535 U.S. at 808 (approving *Wells*'s approach to § 406(b) fee determination).

[33] *Jeter*, 622 F.3d at 382; *McGuire v. Sullivan*, 873 F.2d 974, 983 (7th Cir. 1989), *cited in Gisbrecht*, 535 U.S. at 808 (approving *McGuire*'s approach to § 406(b) fee determination); *see also Rodriquez*, 865 F.2d at 747 ("The reviewing courts . . . should only allow maximum fees for extensive effort on the part of counsel who have overcome *legal and factual obstacles* to the enhancement of the benefits awarded to his client." (emphasis added)).

[34] *Jeter*, 622 F.3d at 382; *see also id.* at 382 n.13 ("Although initial risk is an important factor, it will not always conclude the court's analysis.  A case that appears risky at first may become straightforward through no effort of the claimant's attorney.  A district court would be able to consider such extrinsic events in determining whether a fee is an unearned windfall.").

[35] *Jeter*, 622 F.3d at 382.

[36] *Gisbrecht*, 535 U.S. at 808; *see also Lewis*, 707 F.2d at 249–50 (vacating lower court's "award of the statutory maximum attorney's fee" where representation was substandard in part because the claimant's attorney submitted a four-sentence memorandum that "contained no case citation or any other manifestation of legal research" but billed two hours for its preparation, billed another two hours to review a two-page long motion by the Secretary, and filed another four-sentence document that cited no legal authority but, for which he billed two more hours of preparation time); *Rodriquez*, 865 F.2d at 747 ("Where a case has been submitted on boilerplate pleadings, in which no issues of material fact are present and where no legal research is apparent, the benchmark twenty-five percent of awards fee would obviously be inappropriate.").

[37] *Gisbrecht*, 535 U.S. at 808.

computed based on 37.3 hours worked for this case and an average hourly rate of $232.82

adjusted for an increase in cost of living.  Pl.'s EAJA Fee Mot. at 7, 13–14.  However, Ramirez

and the Commissioner agreed to an award of reasonable attorney's fees in the amount of

$7,500.00, and Ramirez ultimately requested only that amount, *id.* at 7, which Judge Cardone

granted, EAJA Order at 1–2.  The stipulated, and awarded, fee amount translates to 32.2 hours

(*i.e.*, $7,500.00 divided by $232.82) worked for this case.  Accordingly, the Court deems 32.2

hours as the necessary hours expended in this case.  Therefore, for § 406(b) purposes, the *de*

*facto* hourly rate is $489.67 ($15,767.43 divided by 32.2 hours).

Next, what is a lodestar or reasonable hourly rate?  The Court looks to "the prevailing

market rates in the relevant legal market," *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000),

"for attorneys of similar experience in similar cases," *Shipes v. Trinity Indus.*, 987 F.2d 311, 319

(5th Cir. 1993), but not to "the rates that lions at the bar may command," *Hopwood*, 236 F.3d at

281 (internal quotes and citation omitted).[38]  The relevant legal market is El Paso, Texas, where

this Court sits.  *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("The relevant

market . . . is the community in which the district court sits."); 28 U.S.C. § 124(d)(3) ("The El

Paso Division [of the Western District of Texas] comprises the county of El Paso.").  Konoski

does not state how many years of experience he has in social security disability matters.  But he

does state that he is duly admitted to practice law before the State of New York, Pl.'s § 406(b)

Fee Mot. at 2, and according to the New York State Unified Court System, Konoski was

---

[38] In determining the lodestar, "[t]he attorney's usual non-contingent hourly rate or the prevailing market rate charged in the relevant community for similar legal services are measures typically used as a first approximation of the reasonable hourly rate."  *Brown*, 917 F.2d at 192.  Konoski does not state what his normal hourly rate is for non-contingent-fee cases.  *See Gisbrecht*, 535 U.S. at 808 ("[T]he court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's *normal hourly billing charge for noncontingent-fee cases.*" (emphasis added)).

admitted to practice law in New York in 2003.[39]  Therefore, the Court assumes that Konoski, who is a partner at his law firm, has about 20 years of experience in social security disability matters.  As Judge Cardone has recently observed, judges in the El Paso Division of this District have awarded no more than $300 as the lodestar hourly rate "even when the attorney has decades of experience."  *Apac v. MEH Props. Inc*., No. EP-24-CV-127-KC, 2024 WL 4647640, at *10 (W.D. Tex. Nov. 1, 2024) (collecting cases); *see also id.* (finding in that case, a disability discrimination case, that reasonable hourly rate was $300.00 for a veteran attorney with thirty-two years of experience whereas the attorney argued for an hourly rate of $425.00); *Wells Fargo Bank, N.A. v. Soledad*, No. EP-24-CV-23-KC, 2025 WL 683450, at *9–*10 (W.D. Tex. Mar. 4, 2025) (finding in that case, a breach-of-contract case, that reasonable hourly rate was $342.01 where the attorney, a partner, argued for an hourly rate of $408.80 but "d[id] not specify her years of experience").  The Court assumes that the lodestar, reasonable hourly rate for Konoski is $350.00.

Thus, the *de facto* hourly rate ($489.67) is 1.4 times the lodestar hourly rate ($350.00).  On its face, the *de facto* hourly rate and the corresponding fee amount do not appear to constitute a windfall.  The Court turns to the windfall factors.

As to the first factor (percentage of the past-due benefits the fee constitutes), Konoski seeks less than the maximum percentage allowed.  As mentioned, the statutory maximum amount is 25% of Ramirez's past-due benefits—the same amount that Ramirez agreed to pay in the fee agreement.  Pl.'s § 406(b) Fee Mot., Ex. B at 1.  According to the Notice of Award, the SSA withheld $17,467.43 from Ramirez's past-due benefits for possible future payment of attorney's fees under § 406, Pl.'s § 406(b) Fee Mot., Ex. A at 3, and the withheld amount

---

[39] *See* https://iapps.courts.state.ny.us/attorneyservices/search?0 (last visited on Apr. 16, 2025).

represents 25% of the past-due benefits, Pl.'s § 406(b) Fee Mot. at ¶ 4. So, Ramirez's past-due

benefits amount to $69,869.72 (*i.e.*, 4 times $17,467.43). In turn, therefore, Konoski's requested

§ 406(b) fee amount ($15,767.43) constitutes 22.6% of past-due benefits—which is 2.4% less

than the agreed-upon amount and the statutory maximum amount.

Ramirez's appeal presented a not so difficult case. Although in Ramirez's brief,

Konoski, on her behalf, advanced several arguments, only one argument carried the day.

Specifically, Konoski's winning argument was that the Commissioner reversibly erred by failing

to consider, or even mention, Ramirez's Carpal Tunnel Syndrome (CTS) in assessing her

residual functional capacity (RFC), and for support, Konoski pointed to medical records from

two doctor's visits in 2021, which show that Ramirez was diagnosed with CTS and had signs of

CTS. Pl.'s Br. at 6, 9–11. Judge Schydlower agreed, explaining that "[t]he ALJ had Dr.

Barahona's records and heard Plaintiff's testimony about unintentionally dropping things but the

opinion omits altogether any reference to carpal tunnel syndrome." R & R at 4; *see also id.* at 5

("The ALJ must consider the limiting effects of an individual's impairments when generating the

RFC, even those that are non-severe, along with related symptoms." (citing 20 C.F.R. §§

404.1529(d)(4), 404.1545(a)(2))). The ease of the case is demonstrated by the fact that the

record contained unambiguous medical evidence of CTS, but the ALJ simply did not mention

CTS in his written decision. It is also worth noting that the entirety of Konoski's winning

argument spans one and a half pages (double spaced). Pl.'s Br. at 9–11.

As for the third windfall factor, "[c]ounsel always are accepting some risk in taking

social security cases under contingency fee contracts because, statistically, roughly fifty percent

will lose at the district court level." *Jeter*, 622 F.3d at 379 n.9; *cf. also Crawford*, 586 F.3d at

1158 (Bea, J. dissenting) ("[E]*very* [Social Security benefits] case involves risk of loss. If that

factor is sufficient to show requested attorney[']s fees are reasonable, district courts will be reduced to rubber stamping contingency fee requests.").  In this case, before the Appeals Council, Reyes, Ramirez's attorney in the administrative proceedings, raised the precise argument on which Ramirez ultimately prevailed on appeal before this Court.  Tr. at 515 (arguing that "[d]espite this evidence of bilateral carpal tunnel syndrome, the [ALJ's] decision is silent as to its existence" and that "[t]he ALJ's failure to consider the Claimant's bilateral carpal tunnel syndrome in the decision is error" (counsel's brief dated Oct. 27, 2021)).  But the Appeals Council found no grounds for reviewing the ALJ's decision and let the decision stand.  Tr. at 1. Yet, on a prior appeal, the Appeals Council vacated the ALJ's earlier decision for failure to "discuss" certain other medical records.  Tr. at 186–87.  So, it appears, at the time Konoski agreed to represent Ramirez before this Court, the case presented an elevated risk of loss for Konoski.

The analyses of the remaining factors are straightforward.  Konoski's skill and experience in handling security disability matters on appeal to federal court are adequately demonstrated.  *See* Pl.'s § 406(b) Fee Mot. at ¶¶ 16–25.  The character of the representation was not substandard: although not every ground asserted for reversal was successful, Konoski submitted, on Ramirez's behalf, a sixteen-page long brief, which reveals that Konoski (and his legal team) conducted a considerable amount of legal research and review of the administrative record in challenging the Commissioner's decision.  Pl.'s Br. at 2–17.  And Konoski achieved a substantial result for Ramirez: The SSA awarded her not only a significant sum in past-due benefits ($69,869.72), but also a prospective monthly benefit allowance ($1,109 in December 2023 dollars) for the remainder of her life—subject to any future improvement in her medical conditions that may render her not disabled.  Pl.'s § 406(b) Fee Mot., Ex. A at 1, 3.

After considering the windfall factors in combination, the Court finds that the *de facto* hourly rate of $489.67 and in turn, the requested fee in the amount of $15,767.43 do not constitute an unreasonable windfall. The Court concludes that the requested fee is reasonable under 42 U.S.C. § 406(b)(1)(A) and should be awarded.

Finally, as mentioned, Konoski requests that the Court award him a net total of $8,267.43, an amount that is equal to $15,767.43, the fee requested and approved under § 406(b), minus $7,500.00, which Konoski previously received under the EAJA.[40] Konoski's request should be granted. *See Jackson v. Comm'r of Soc. Sec.*, 601 F.3d 1268, 1274 (11th Cir. 2010) ("Although an attorney who receives fees under both the EAJA and 42 U.S.C. § 406(b) must refund the smaller fee to his client, the attorney may choose to effectuate the refund by deducting the amount of an earlier EAJA award from his subsequent 42 U.S.C. § 406(b) fee request."); *O'Donnell*, 983 F.3d at 954, 959 (concluding that the lower court did not abuse its discretion in

---

[40] This method of awarding a net fee is often called the "netting" method. *O'Donnell v. Saul*, 983 F.3d 950, 953 (7th Cir. 2020). An alternative method, which may be called the "direct-refund" method, is to award the full amount of the § 406(b) fee to the attorney but require the attorney to refund the EAJA award directly to the claimant. *Id.* at 957 n.3; *see also, e.g.*, Judgment, *Jeter v. Astrue*, No. 2:06-CV-00081-PM (W.D. La. Apr. 3, 2009) (awarding "$6,281.25, conditioned . . . upon counsel's immediate remittance to the plaintiff . . . of $2,287.50 previously awarded . . . under the [EAJA]"), ECF No. 33-1, *aff'd Jeter*, 622 F.3d at 375 n.5 (noting *en passant* that the lower court used the direct-refund method in awarding fees).

The direct-refund method "hews" to the language of the EAJA's Savings Provision, an uncodified 1985 amendment to the EAJA. *O'Donnell*, 983 F.3d at 957 n.3; *see also* 28 U.S.C. § 2412 note, Act of Aug. 5, 1985, Pub. L. No. 99–80, § 3, 99 Stat. 183, 186 (the Savings Provision) (providing that an attorney does not violate 42 U.S.C. § 406(b)(2)—which makes it a misdemeanor for any attorney to charge, demand, receive, or collect a fee for court representation in excess of the 25% cap in § 406(b)(1)—by accepting an EAJA fee in addition to a court fee under § 406(b)(1) "but only if, where the . . . attorney receives fees for the same work under both [§ 406(b)(1)] and [the EAJA], the . . . attorney *refunds* to the claimant the amount of the smaller fee" (emphasis added)).

As obvious, the netting method avoids an extra step on the part of the court attorney, such as Konoski, to write and mail a refund check to the claimant. It also leaves more money in the Commissioner's hands (*i.e.*, the withheld pool of 25% of past-due benefits) for payment of § 406(a) agency fees to the agency attorney, such as Reyes—while also providing the court attorney the full amount awarded under § 406(b). *O'Donnell*, 983 F.3d at 953.

rejecting the "netting" method and awarding counsel "the full $14,515.37 under § 406(b) and requir[ing] him to return to [the claimant] the EAJA award that he'd already received," but also acknowledging that "the netting method is permissible").

### III.    CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED**[41] that Plaintiff Maria Ramirez's Motion for Authorization of Attorney Fees Pursuant to 42 USC § 406(b) (ECF No. 23) be **GRANTED**.

**IT IS THEREFORE RECOMMENDED** that Attorney Bryan Konoski be **AWARDED** attorney's fees under 42 U.S.C. § 406(b) in the **NET** amount of **$8,267.43** to be paid out of Plaintiff Maria Ramirez's past-due benefits withheld by the Social Security Administration for such purposes.

**So ORDERED and SIGNED this  17th  day of April 2025.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] *See* 28 U.S.C. § 636(b)(1)(B) (A district "judge may . . . designate a magistrate judge . . . to submit to [the district] judge . . . proposed findings of fact and recommendations for the disposition . . . of any motion excepted in subparagraph (A)" of § 636(b)(1).); Fed. R. Civ. P. 72(b)(1) (providing that on a dispositive motion, "[t]he magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact"); Fed. R. Civ. P. 54(d)(2)(D) ("[T]he court . . . may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a *dispositive* pretrial matter." (emphasis added)); *see also McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005) ("A Magistrate Judge is not permitted to determine costs or fees, but may make a report and recommendation to the district court on such issues."); *Estate of Conners v. O'Connor*, 6 F.3d 656, 659 (9th Cir. 1993) (similar); *cf. also Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 947 (D.C. Cir. 2017) ("[W]e join a number of our sister circuits in requiring that motions for attorney's fees be reviewed *de novo* if referred to a Magistrate Judge and properly objected to." (citing cases from the Second, Sixth, and Tenth Circuits)).

## <u>NOTICE</u>

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**